

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

### INDICTMENT FOR CONSPIRACY TO COMMIT WIRE FRAUD, WIRE FRAUD, AGGRAVATED IDENTITY THEFT, AND FORFEITURE ALLEGATIONS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 17-84-BAJ-EWD |
| | : | |
| *versus* | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1028A |
| KEATON L. COPELAND and | : | 18 U.S.C. § 2 |
| DOROTHY V. DELIMA | : | 18 U.S.C. § 982 |
| a.k.a. DOROTHY V. COPELAND | : | 21 U.S.C. § 853(p) |

## THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

1.    **KEATON L. COPELAND** (**"COPELAND"**), a defendant herein, was a resident of Miramar, Florida.  **COPELAND** owned, controlled, and operated Express ACA, LLC ("Express ACA").

2.    **DOROTHY V. DELIMA,** a.k.a. **DOROTHY V. COPELAND,** (**"DELIMA"**), a defendant herein, was a resident of Davie, Florida.  **DELIMA** was employed by Express ACA as an insurance agent.

3.    Express ACA was a health insurance brokerage company located at 14505 Commerce Way, Suite 200, Miami Lakes, Florida.  As a health insurance broker, Express

1

J. Casey

ACA was purportedly in the business of assisting individuals to enroll in health insurance policies that met the requirements of the Affordable Care Act.

4.      Blue Cross Blue Shield of Louisiana ("BCBSLA") was a health insurance company located in Baton Rouge, Louisiana.  BCBSLA serviced customers through offices in the Middle District of Louisiana and elsewhere.

5.      Anthem, Inc. ("Anthem") was a health insurance company located in Atlanta, Georgia, which provided products and services to customers in numerous states including Georgia.  One of Anthem's subsidiaries was Blue Cross Blue Shield of Georgia.

6.      Humana, Inc. ("Humana") was a health insurance company located in Louisville, Kentucky, which provided products and services to customers in numerous states including Florida, Georgia, Texas, Tennessee, Mississippi, and Louisiana.

7.      Preferred Medical Plan ("Preferred Medical") was a health insurance company located in Miami Lakes, Florida, which provided products and services to customers in Florida.

8.      Personally identifiable information ("PII") was information that could be used on its own or with other information to identity a person.  As used herein, PII included a person's full name, home address, date of birth, and/or Social Security number.

9.      A "means of identification" was any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including a name, date of birth, or Social Security number.

10.     SM, BA, DG, LL, RR, BK, PY, LP, AL, IS, TW, and others were real people whose names and other PII were used by **COPELAND** and **DELIMA** without their knowledge or consent.

## BACKGROUND

*Affordable Care Act*

11.     In 2010, Congress passed the Affordable Care Act (ACA).  One of the key provisions of the ACA was the mandate that individuals maintain "minimum essential" health insurance coverage.  To assist individuals in obtaining minimum essential coverage, some states established state-sponsored health insurance exchanges ("marketplaces").  These marketplaces enabled individuals to select from a variety of health insurance plans that satisfied the minimum essential coverage requirement.  For those individuals who lived in states without a marketplace, the federal government established www.Healthcare.gov, a website to assist these individuals in obtaining health insurance and in satisfying the minimum essential coverage requirement.

12.     Under the ACA, the federal government also made federal subsidies available to assist certain individuals in covering the cost of their monthly premiums.  Eligibility for the subsidies depended on factors such as income, location, and the number of people in a household.  In some cases, an individual could qualify for a 100% subsidy from the federal government to pay his or her health insurance premium.

*Contracts with Health Insurance Companies*

13.     To purportedly assist individuals in obtaining health insurance coverage, Express ACA, through **COPELAND**, entered into contracts or agreements with numerous

health insurance companies including BCBSLA, Anthem, Humana, and Preferred Medical. Under these contracts, Express ACA agreed to enroll individuals in health insurance policies offered by the companies that complied with the Affordable Care Act. In exchange, the health insurance companies agreed to pay Express ACA a commission fee based on the total amount of annual premiums they would receive from enrollments facilitated by Express ACA. The commission fee was a percentage of these total annual premiums. The fee varied among the health insurance companies but was usually between 4% and 10%.

*Health Insurance Plans*

14.     Each health insurance company offered several tiers of health insurance plans that satisfied the Affordable Care Act's minimum essential coverage requirement. These health insurance companies often characterized their tiers of plans as platinum, gold, silver, and bronze. The tiers had varying premiums, co-pays, and deductible amounts, and the tiers qualified policyholders for different subsidy levels. In most cases, bronze plans qualified policyholders for a 100% subsidy from the U.S. Government, meaning that the policyholder would not have to pay any out-of-pocket expenses. The total annual premium for a typical bronze plan at BCBSLA, for instance, was approximately $6,000, meaning that the U.S. Government would subsidize the full $6,000 and the policyholder would pay nothing.

15.     Before a health insurance broker could enroll individuals in a policy, one of its employees or agents had to obtain a National Producer Number ("NPN"). Once this NPN was obtained, the broker could enter into contracts and/or agreements with health insurance companies to operate as an agent for the companies.

4

## COUNT ONE
## CONSPIRACY TO COMMIT WIRE FRAUD

16.     Paragraphs 1 through 15 of this Indictment are incorporated herein by reference as factual allegations.

**The Scheme:**

17.     Beginning at least on or about January 3, 2014, through on or about May 31, 2015, within the Middle District of Louisiana and elsewhere, **KEATON L. COPELAND** and **DOROTHY V. DELIMA,** a.k.a. **DOROTHY V. COPELAND**, the defendants herein, and others known and unknown, did knowingly and intentionally conspire and agree to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds.

**Purpose of the Scheme:**

18.     The purposes of the defendants' scheme were as described in the following paragraphs.

19.     The defendants sought to obtain monies, funds, assets, and other property owned by and under the custody and control of several health insurance companies, by means of false and fraudulent pretenses, representations, and promises, and by using the PII of other real persons.

20.     The defendants also sought to cause the United States to pay premium payments to numerous insurance companies, by means of false and fraudulent pretenses,

5

representations, and promises, and by using the PII of other real persons, thereby generating commissions due from the insurance companies to the defendants.

**Manner and Means:**

21.     In furtherance of the scheme and to accomplish the purposes of the scheme, **COPELAND** and **DELIMA** used the following manner and means to commit, and to cause to be committed, the following acts, among others, in the Middle District of Louisiana and elsewhere, as described in the following paragraphs.

22.     **COPELAND** would form and register Express ACA.

23.     **COPELAND** would maintain and control the following corporate bank accounts for Express ACA: account number XXX-XX-5809 at Chase Bank in Hialeah, Florida; account number XXXX-XXXX-5844 at Bank of America in Miami Beach, Florida; and several accounts, including account numbers XXX-XXX-7114, XXX-XXX-1123, XXX-XXX-1107, XXX-XXX-1115, at Wells Fargo Bank in Pembroke Pines, Florida.

24.     **COPELAND** and others would enter into agreements with tax preparation businesses in Baton Rouge, Louisiana, and elsewhere, and induce the businesses to provide them with the names and personal identifying information ("PII") of their customers, which information could be used by Express ACA to submit fraudulent insurance applications to BCBSLA and other providers.

25.     **COPELAND** and **DELIMA** would obtain numerous NPNs, including an NPN in **DELIMA's** name, an NPN in the name of Express ACA, and NPNs assigned to other individuals, including IS, KB, CC, WS, and KG, some of which Express ACA obtained and/or used through fraudulent pretenses and misrepresentations.

26.     **COPELAND** and **DELIMA** would instruct data-entry clerks employed at Express ACA to (a) enter the names and PII that the defendants had obtained into internal records and (b) use the information to submit health insurance applications in the victims' names, while **COPELAND** and **DELIMA** knew that the applications were being submitted without the victims' knowledge, consent, and/or authorization.

27.     As Express ACA continued to submit false and fraudulent insurance applications in the victims' names, without the victims' knowledge or authorization, **COPELAND** and **DELIMA** would falsely represent to the insurers that they had contacted the applicants in advance, that the victims had actually selected and authorized the applications that Express ACA had submitted, and that the applications were genuine.

28.     From approximately on or about January 27, 2015, through on or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of approximately 1,319 health insurance applications for individual health insurance policies with BCBSLA.  Virtually all of the applications (approximately 1,292 out of 1,319) were for so-called bronze plans. Many of the applications were fraudulent, either because (a) the defendants had submitted the applications without the applicants' knowledge or consent, (b) the defendants submitted the applications using incorrect personal information (such as date of birth and gender) and fictitious contact information for the applicants, and/or (c) the defendants had falsified the applicants' income amounts so that the applicant would appear to qualify for a large federal subsidy.

29.     From approximately in or about January 2014 through in or about February 2015, **COPELAND** and **DELIMA** caused the submission of numerous fraudulent

applications for individual health insurance policies with Anthem without the applicants'

knowledge or consent.  In fact, on many of these applications, the addresses had been

falsified and included locations such as abandoned car lots and U-Haul storage facilities.  On

more than 100 applications, the individuals were deceased at the time that Express ACA

submitted the health insurance applications on their behalf.

30.     Similarly, from approximately on or about January 29, 2014, through on or

about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of numerous

health insurance applications for individual health insurance policies with Humana, without

many of the applicants' knowledge or consent.  Many of the applicants' identities had

previously been stolen.

31.     As a result of this scheme, the defendants sought and attempted to earn

commission payments from BCBSLA and the other insurance companies referenced herein,

and, in addition, caused the U.S. Government to actually make premium payments to such

insurers, totaling more than $500,000, all based on the fraudulent applications described

above.

**Acts in Execution of the Scheme:**

32.     In order to execute and attempt to execute the scheme, and to accomplish the

purposes of the scheme, the defendants, **COPELAND** and **DELIMA**, and others known and

unknown, committed and caused others to commit the following acts, among others, within

the Middle District of Louisiana and elsewhere, as described in the following paragraphs.

33.     **COPELAND** and **DELIMA** instructed the data-entry clerks, and caused the

data-entry clerks to be instructed, to add or change the income amounts on applications for

8

health insurance policies, usually to an amount much lower than the policyholders' actual incomes.  The purpose of this was to generate higher commissions for Express ACA.

34.     **COPELAND** and **DELIMA** instructed the data-entry clerks, and caused the data-entry clerks to be instructed, to use false addresses and phone numbers on numerous applications for health insurance policies.

35.     Furthermore, **COPELAND** and **DELIMA** instructed the data-entry clerks, and caused the data-entry clerks to be instructed, to create new email accounts in the names of the applicants, without notifying the applicants.  The sole purpose of these accounts was to facilitate the defendants' scheme by allowing the defendants to submit applications without alerting the individuals named in the applications themselves.  **COPELAND** and **DELIMA** further instructed the data-entry clerks, and caused the data-entry clerks to be instructed, to create passwords for the email accounts, and to establish answers to security questions for applicants that were the exact same for every account, all without notifying the applicants.

36.     **COPELAND** and **DELIMA** caused the NPNs for IS and others, without their knowledge or consent, to be used to enroll applicants in health insurance policies with BCBSLA, Preferred Medical, and others.

37.     **COPELAND** and **DELIMA** caused the submission of numerous fraudulent applications to BCBSLA for bronze plan insurance policies, via electronic transmission to Baton Rouge, Louisiana, including the following:

a.     On or about February 12, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application, under **DELIMA**'s NPN, for RR, without RR's consent or knowledge.  The application listed a false address and phone number for RR, and

9

falsely represented RR's income to be $0.

      b.     On or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application, under **DELIMA**'s NPN, for SM, without his consent or knowledge.  The application listed a false address and phone number for SM, and falsely represented SM's monthly income to be $1,000.

      c.     On or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application, under **DELIMA**'s NPN, for BA, without his consent or knowledge.  The application listed a false address for BA, and falsely represented BA's monthly income to be $1,000.

      d.     On or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application, under **DELIMA**'s NPN, for DG, without her consent or knowledge.  The application listed a false address and phone number for DG, and falsely represented D.G.'s monthly income to be $1,000.

      e.     On or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application, under **DELIMA**'s NPN, for LL, without her consent or knowledge.   The application listed a false address for LL and falsely represented LL's monthly income to be $1,000.

    38.    As a BCBSLA representative in Baton Rouge questioned **COPELAND** about the applications Express ACA was submitting, **COPELAND** falsely represented to BCBSLA that **DELIMA** and others communicated with all of the BCBSLA health insurance applicants, explaining the various health insurance plans and receiving signed consent forms from all of the applicants, when, in fact, they had not communicated with them.

39.     Similarly, as a BCBSLA representative in Baton Rouge questioned **DELIMA** about the applications Express ACA was submitting, **DELIMA** falsely represented to BCBSLA that she communicated with all of the BCBSLA applicants, explaining the various health insurance plans such as the various deductible amounts, premium amounts, and coverage variables, when, in fact, she had not communicated with them.

40.     **COPELAND** and **DELIMA** also caused the submission of numerous fraudulent applications to other insurance providers, via electronic transmission, including the following:

a.     On or about January 22, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application for PY, without her knowledge or consent.

b.     On or about February 15, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application for AL, without her knowledge and consent, which falsely listed her annual income of approximately $24,000, despite the fact that AL had reported her actual annual income as approximately $40,000.

c.     On or about March 1, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application for BK, without her knowledge or consent.  The application falsely listed her residence as a U-Haul storage facility.

d.     On or about March 16, 2015, **COPELAND** and **DELIMA** caused the submission of a fraudulent application for LP, without her knowledge or consent.

41.     On or about February 1, 2015, **DELIMA** fraudulently changed the insurance agent of record for numerous health insurance policyholders to herself without the knowledge or consent of the policyholders.

11

42.     As a result of the fraudulent health insurance applications described above, numerous states, including Florida, Georgia, South Carolina, and Indiana, revoked or suspended **DELIMA**'s insurance license.

The above is a violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH SEVEN
### WIRE FRAUD – 18 U.S.C. § 1343

43.     Paragraphs 1 through 42 of this Indictment are incorporated herein by reference as factual allegations.

44.     On or about the dates listed below, in the Middle District of Louisiana and elsewhere, the defendants, **KEATON L. COPELAND** and **DOROTHY V. DELIMA,** a.k.a. **DOROTHY V. COPELAND**, and others known and unknown to the grand jury, aided and abetted by each other, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communications in interstate commerce the writings, signs, signals, and sounds described below for each count, with each transmission constituting a separate count:

| COUNT | DEFENDANT(S) | DATE (On or About) | WIRE TRANSMISSION |
|---|---|---|---|
| 2 | **COPELAND** | December 27, 2014 | The defendant, **COPELAND,** caused the submission of TW's health insurance application under IS's NPN without TW's or IS's knowledge or consent |
| 3 | **COPELAND** and **DELIMA** | February 12, 2015 | The defendants caused the submission of RR's health insurance application which falsely represented her annual income, her address, and her phone number |
| 4 | **COPELAND** and **DELIMA** | March 1, 2015 | The defendants caused the submission of SM's health insurance application which falsely represented his annual income, his address, and his phone number |

| 5 | **COPELAND** and **DELIMA** | March 1, 2015 | The defendants caused the submission of BA's health insurance application which falsely represented his annual income, his address, and his phone number |
| 6 | **COPELAND** and **DELIMA** | March 1, 2015 | The defendants caused the submission of LL's health insurance application which falsely represented her annual income and her address |
| 7 | **COPELAND** and **DELIMA** | March 1, 2015 | The defendants caused the submission of DG's health insurance application which falsely represented her annual income, her address, and her phone number |

Each of the above is a violation of Title 18, United States Code, Sections 1343 and

2(a).

## COUNT EIGHT
## AGGRAVATED IDENTITY THEFT – 18 U.S.C. § 1028A

45.     Paragraphs 1 through 44 of this Indictment are incorporated herein by

reference as factual allegations.

46.     On or about December 27, 2014, in the Middle District of Louisiana and

elsewhere, defendant, **KEATON L. COPELAND** aided and abetted the knowing transfer,

possession, and use of a means of identification of another person, without lawful authority,

during and in relation to the offense of wire fraud in Count 2 in this Indictment, that is,

**COPELAND** aided and abetted the knowing transfer, possession, and use of the NPN of IS,

an actual person known to the grand jury, during and in relation to committing the offense of

wire fraud in violation of 18 U.S.C. § 1343.

The above is a violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

13

## FORFEITURE ALLEGATIONS

47.     Paragraphs 1 through 44 of this Indictment are incorporated herein by reference as factual allegations.

48.     Upon conviction of an offense alleged in any of Counts 1 through 7 of this Indictment, **KEATON L. COPELAND** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2), all property, real and personal, that constitutes or is derived from proceeds the defendant obtained directly or indirectly as a result of the violation, including but not limited to a sum of money equal to the amount of the proceeds of the offense.

49.     Upon conviction of an offense alleged in Count 1, or any of Counts 3 through 7 of this Indictment, **DOROTHY V. DELIMA**, a.k.a. **DOROTHY V. COPELAND**, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2), all property, real and personal, that constitutes or is derived from proceeds the defendant obtained directly or indirectly as a result of the violation, including but not limited to a sum of money equal to the amount of the proceeds of the offense.

50.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property that cannot be divided without difficulty;

14

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18

U.S.C. § 982(b), to seek forfeiture of any other property of the defendants up to the value of

the forfeitable property described above.

UNITED STATES OF AMERICA, by

A TRUE BILL

**REDACTED
PER PRIVACY ACT**

_____
COREY R. AMUNDSON
ACTING UNITED STATES ATTORNEY
MIDDLE DISTRICT OF LOUISIANA

GRAND JURY FOREPERSON

_____
J. BRADY CASEY
ASSISTANT U.S. ATTORNEY

_06 - July - 2017_____
DATE

15

# Criminal Cover Sheet                    U.S. District Court

**Place of Offense:**                    **Matter to be sealed:** ☒ No  ☒ Yes

City            Baton Rouge            **Related Case Information:**

County/Parish   East Baton Rouge       Superseding Indictment _____ Docket Number _____
                                        Same Defendant           New Defendant  XX
FBI – Tom Goeke                         Magistrate Case Number _____
                                        Search Warrant Case No. _____
                                        R 20/ R 40 from District of _____
                                        **Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name   Dorothy V. Delima a/k/a Dorothy V. Copeland

**U.S. Attorney Information:**

AUSA  J. Brady Casey      LBN   24338

**Interpreter:**  ☐No   Yes      **List language and/or dialect:** _____

**Location Status:**

Arrest Date    _____
_____        Already in Federal Custody as of
_____        Already in State Custody
_____        On Pretrial Release

**U.S.C. Citations:**

Total # of Counts:        6

| Index Key/Code | Description of Offense Charged | Count(s) | Petty/ Misdemeanor/ Felony |
|---|---|---|---|
| 18:1349 | Conspiracy to Commit Wire Fraud | 1 | Felony |
| 18:1343 | Wire Fraud | 3 - 7 | Felony |

**Date:** July 6, 2017        **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____

# Criminal Cover Sheet                    U.S. District Court

**Place of Offense:**                    **Matter to be sealed:** ~~No~~ X Yes

City            Baton Rouge              **Related Case Information:**

County/Parish   East Baton Rouge         Superseding Indictment _____ Docket Number _____
                                         Same Defendant          New Defendant  XX
FBI – Tom Goeke                          Magistrate Case Number _____
                                         Search Warrant Case No. _____
                                         R 20/ R 40 from District of _____
                                         **Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name    Keaton L. Copeland

**U.S. Attorney Information:**

AUSA  J. Brady Casey        LBN    24338

**Interpreter:**  ☐No    Yes        **List language and/or dialect:** _____

**Location Status:**

Arrest Date    _____
_____    Already in Federal Custody as of
_____    Already in State Custody
_____    On Pretrial Release

**U.S.C. Citations:**

Total # of Counts:         8

| Index Key/Code | Description of Offense Charged | Count(s) | Petty/ Misdemeanor/ Felony |
|---|---|---|---|
| 18:1349 | Conspiracy to Commit Wire Fraud | 1 | Felony |
| 18:1343 | Wire Fraud | 2 - 7 | Felony |
| 18:1028A | Aggravated Identity Theft | 8 | Felony |

**Date:** July 6, 2017        **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____